UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MATTHEW MCKINNON, <br><br> Petitioner, <br><br> v. <br><br> KELLY RYAN, <br><br> Respondent. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 14-12005-PBS <br> ) <br> ) <br> ) <br> ) <br> ) |

REPORT AND RECOMMENDATION ON
PETITION FOR WRIT OF HABEAS CORPUS

April 11, 2017

BOAL, M.J.

On October 17, 2014, Matthew McKinnon petitioned this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  (Docket No. 1).  McKinnon was convicted of second degree murder and is currently serving a life sentence.  The Respondent, Kelly Ryan, opposes the petition.  (Docket No. 16).  For the reasons set forth below, I recommend that the District Judge DENY the Petition.

I. PROCEDURAL BACKGROUND

On September 30, 2005, a Plymouth County grand jury indicted McKinnon on the charge of murder in the first degree of Claudy Jean-Poix.  (S.A. 18).[1]  On November 6, 2007, a Brockton Superior Court jury found McKinnon guilty of the lesser-included offense of second

---

[1] "S.A. ___" refers to the Supplemental Answer filed by Respondent.

1

degree murder.  (S.A. 13).  McKinnon filed a timely appeal of his conviction with the Massachusetts Appeals Court, which affirmed the conviction in a summary opinion on November 12, 2010.  Id.  The Supreme Judicial Court ("SJC") denied further appellate review on February 9, 2011.  (S.A. 17).

On May 7, 2012, McKinnon filed a motion for a new trial alleging that his Sixth Amendment right was violated because the public, including all of his family members, were excluded from the entirety of the jury selection process—a right which he says was not waived and of which he was unaware.  (S.A. 14, 18).  Further, McKinnon argued his right to effective assistance of counsel was violated, because counsel failed to advise him of his right to a public jury selection process and failed to object to the closure of the courtroom for the voir dire process.  (S.A. 18).  McKinnon also argued that the evidence was insufficient to support the conviction of second degree murder because the only evidence of malice presented at trial was in relation to the felony-murder charge for which he was acquitted.  Id.  Finally, McKinnon argued that the trial court did not properly instruct on excessive use of force in self-defense.  Id.  By decision dated January 7, 2013, the trial court summarily denied the motion without a hearing.  (S.A. 15, 18-25).   The Massachusetts Appeals Court affirmed the denial of the motion on March 11, 2014.  (S.A. 218-219).  The SJC denied McKinnon's request for further appellate review on May 2, 2014 (S.A. 247), and McKinnon filed the instant petition for habeas corpus on the same day.  (Docket No. 1).

II.     FACTUAL BACKGROUND

    A.     <u>Colloquy About Jury Selection</u>

During the trial, the following exchange between the judge and trial counsel about the closure of the courtroom occurred:

> The Court: Mr. O'Boy.
>
> Mr. O'Boy: Yes?
>
> The Court: You indicated yesterday – and I don't want to put the details on the record – a problem that – that you and I suffer from having to do with a particular area of our lower extremities – knees.
>
> Mr. O'Boy: Yes.
>
> The Court: If we do a side bar with 50, 60 people, it's going to take a long, long time.
>
> Mr. O'Boy: I have no problem with standing, Judge. It's just – it's just in –
>
> The Court: But –
>
> Mr. O'Boy: – in getting up.
>
> The Court: But we'll be getting up and down quite a bit at the beginning for the initial voir dire, the general questions.
>
> Mr. O'Boy: I've done it –
>
> The Court: All right. You tell me when – when you have a problem, because then what I can do, if your client has no objection, move the individual voir dire to a jury deliberation room, which I've done, but only with the assent of the defendant, because it's not an open courtroom. So we would be seated around counsel – around a table with the defendant present, and other counsel, an assistant, and with a court reporter. So one – individual – the individual voir dires I've done that way. And the person comes in, seated at the head of the table, I put questions to individuals. Sometimes I allow follow-up questions. And that is done for a number of hours, and then we finally come out into the courtroom and make the selection. So we will start as we usually do, in the open courtroom going to side bar, but if at some point you feel it is more comfortable for you to do it in the jury deliberation room seated, you let me know.

> Mr. O'Boy: It would be more comfortable, Judge, but let me talk with my client.
>
> The Court: He has to agree.
>
> Mr. O'Boy: I've talked with my client as to whether or not he wished to be up at side bar, and he has informed me that – I told him he has an absolute right to be up there when your Honor is asking questions, he's informed me that he does not wish to.
>
> …
>
> Mr. O'Boy: Judge, I've conferred with my client as to your Honor's very kind suggestion about using the jury room. And my client agrees with that, and –
>
> The Court: All right.
>
> Mr. O'Boy: – I informed him that he has every right to have it otherwise, but he –
>
> The Court: He has a right to have this done in a – in the open courtroom.

(F.S.A. at 167-172). The judge then explained in detail how the modified jury selection process would work. Id. Following the exchange, neither the defendant nor defense counsel made any attempt to object. Id.

    B.    <u>Trial And Appellate Court Findings</u>[2]

The motion judge made the following factual findings regarding McKinnon's public trial

---

[2] The Massachusetts Appeals Court's recitation of the facts is entitled to a presumption of correctness. See 28 U.S.C. § 2254(e)(1); <u>Gunter v. Maloney</u>, 291 F.3d 74, 76 (1st Cir. 2002); <u>Sanna v. DiPaolo</u>, 265 F.3d 1, 7 (1st Cir. 2001); <u>Coombs v. State of ME.</u>, 202 F.3d 14, 18 (1st Cir. 2000). The AEDPA presumption of correctness applies to all "basic, primary, or historical facts" underlying the state court's conclusion. <u>Sanna</u>, 265 F.3d at 7. In addition, the presumption of correctness extends to factual determinations made by both state trial and appellate courts, <u>Rashad v. Walsh</u>, 300 F.3d 27, 34 (1st Cir. 2002), and to any factual findings implicit in the state court's ruling. <u>Lavalle v. Delle Rose</u>, 410 U.S. 690, 692 (1972) (applying prior version of statute); <u>Weeks v. Snyder</u>, 219 F.3d 245, 258 (3rd Cir. 2000). The Court can supplement with other record facts consistent with the Appeals Court's findings. See <u>Yeboah-Sefah v. Ficco</u>, 556 F.3d 53, 62 (1st Cir. 2009); <u>Healy v. Spencer</u>, 453 F.3d 21, 22 (1st Cir. 2006).

4

claim:

> The defendant claims that the trial judge excluded the public from all aspects of jury selection. To support this allegation, he offers his own affidavit, wherein he alleges that he was not informed of his right to have the jury selected in open court, he never intended to waive his right to a public trial, and he never would have waived this right if properly informed. The defendant's family members, Vera and Charles Springer, submitted affidavits claiming that they were not permitted to be present for any part of jury selection.
>
> I find that the defendant has failed to establish that the public was excluded from the courtroom. I also find that the defendant waived his right to challenge the individual voir dire procedure conducted inside the jury deliberation room. The trial transcript flatly contradicts the defendant's self-serving claims that he was not aware of his right to a public proceeding and did not agree to move the individual voir dire portion of jury selection to the to the [sic] deliberation room.
>
> Judge Grabau, an experienced trial judge, began the session "in open court" with the defendant present. He noted that trial counsel had difficulty with his knees and asked him if he would have a problem continually getting up and down during the voir dire process. Judge Grabau stated, "All right. You tell me when—when you have a problem, because then what I can do, if your client has no objection, move the individual voir dire to a jury deliberation room which I've done, but only with the assent of the defendant, because it's not an open courtroom . . . So we will start, as we usually do, in the open courtroom going to sidebar, but if at some point you feel it is more comfortable for you to do it in the jury deliberation room seated, you let me know." Trial counsel answered, "It would be more comfortable, Judge, but let me talk with my client." The trial judge ended the discussion by stressing, "He [the defendant] has to agree."
>
> Thereafter, in open court with the defendant present, trial counsel represented that he discussed the issue with his client and that the defendant agreed to move the individual voir dire to the jury deliberation room. "Judge, I've conferred with my client as to your Honor's very kind suggestion about using the jury deliberation room. And my client agrees with that, and . . . I informed him that he has every right to have it otherwise, but he--" The trial judge made it clear that the defendant would be waiving his right to a public trial. "He has a right to have this done in a – in the open courtroom." The defendant did not object to the proposed procedure described by the trial judge, in which he "would ask the general questions of the venire when they come here [in the courtroom]" and "they will reserve their responses till we see them in the deliberation room."

> The defendant waived his rights by consenting to the proceedings without objection or complaint. See Commonwealth v. Dyer, 460 Mass. at 736-37 (defendant waived public trial right by failing to object to moving the proceedings from the courtroom to the air conditioned lobby); Commonwealth v. Rogers, 459 Mass. 249, 264 (2011) (defendant, through counsel, indicated his assent to judge's remedy for overcrowded courtroom and "may not now be heard to complain of the strategy that was adopted").
>
> In stark contrast to the trial transcript, the defendant now asserts that "I was never advised of my right to a public trial during jury selection by my trial attorney, Attorney O'Boy, nor did I ever knowingly waive such a right to a public trial." The defendant's affidavit is simply not credible. See Commonwealth v. Grant, 426 Mass. 667, 673 (1998) ("The judge, of course, had the right to reject as credible the defendant's self-serving, conclusory affidavit").
>
> I also reject the affidavits submitted by the defendant's family members. The trial transcript indicates that the proceedings, with the exception of the individual voir dire, were conducted in "open court." The trial judge repeatedly demonstrated his awareness of the defendant's right to a public trial by raising the issue on his own when offering trial counsel the opportunity to move the individual voir dire to a room as a thoughtful accommodation to spare trial counsel the discomfort of standing up and sitting down for an extended time period. Moreover, the affidavits submitted by Charles and Vera Springer are suspect. Apart from inherent bias, the conclusory affidavits are worded identically and suspiciously devoid of factual detail which would be expected from individuals with first-hand knowledge that unidentified court officers ejected them from the courtroom.
>
> I find the defendant's failure to include an affidavit from trial counsel troubling. Trial counsel was in a unique position to shed light on his conversation with the defendant regarding the trial judge's offer to move the individual voir dire proceedings to the deliberation room. Commonwealth v. Bell, 460 Mass. 294, 305 (2011); Commonwealth v. Savage, 51 Mass. App. Ct. 500, 505 n.6 (2001).

(S.A. 20-22).

The Appeals Court affirmed the reviewing court's denial of the motion, agreed with the factual findings, and made the following determination:

> On appeal from the denial of the motion, the defendant argues that his Sixth Amendment right to a public trial was violated because, without his knowledge and consent, the public, including all of his family members,

> was excluded from the entirety of the jury selection process; that he was deprived of his right to effective assistance of counsel; that the evidence was insufficient to support the conviction; that the judge's supplemental instructions on self-defense were flawed; and that the judge improperly denied his motion for a new trial without conducting an evidentiary hearing.
>
> . . .
>
> Here, the defendant claimed that the trial judge excluded the public in general, and his family members in particular, from all aspects of the jury selection. In support of that claim, the defendant submitted the affidavits of himself and several family members. In the defendant's affidavit, he alleged that he was not informed of his right to a public trial; that he never intended to waive that right; and that had he been informed of the right, he would not have waived it.
>
> We have reviewed the trial record and it supports the judge's conclusion that the trial transcript flatly contradicts the defendant's claims. The trial judge began the session in open court with the defendant present and, after discussion with the defendant and his lawyer, moved the individual voir dire portion of the jury selection to a deliberation room. Prior to the move, the judge clearly announced to the defendant that he had the right to have the proceeding conducted in an open courtroom. The defendant did not object to the procedure and, therefore, waived his rights to having the individual voir dire portion of the proceeding conducted in open court. See Commonwealth v. Dyer, 460 Mass. 728, 736-737, 955 N.E.2d 271, 281-82 (2011).

Commonwealth v. McKinnon, 85 Mass. App. Ct. 1105 (S.A. 218).

III.   DISCUSSION

    A.   Habeas Corpus Standard Of Review

McKinnon cannot obtain federal habeas relief under 28 U.S.C. § 2254(d) unless he can show that the Appeals Court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Butler v. Mitchell, 815 F.3d 87, 89 (1st Cir. 2016).

The "contrary to" prong is satisfied when the state court "applies a rule different from the governing law set forth in [the Supreme Court] cases, or if it decides a case differently than [the

Supreme Court] have done on a set of materially indistinguishable facts." Bell v. Cone, 535 U.S. 685, 694 (2002). The "unreasonable application" prong is satisfied if the state court decision "correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of the particular case." Id.; see also White v. Woodall, 134 S. Ct. 1697, 1705 (2014). Moreover, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 411 (2000).

AEDPA also allows relief from a state court judgment if that judgment is based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). "Under this standard, 'the state court's factual findings are entitled to a presumption of correctness that can be rebutted only be clear and convincing evidence to the contrary.'" Rashad v. Walsh, 300 F.3d 27, 35 (1st Cir. 2002). "Unless the petitioner can carry this heavy burden, a federal habeas court must credit the state court's findings of fact-and that remains true when those findings are made by a state appellate court as well as when they are made by a state trial court." Id. (citations omitted). The "prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement." Harrington v. Richter, 562 U.S. 86, 102 (2011).

B.   Procedural Default

The Respondent argues that McKinnon is not entitled to federal habeas relief on his claim that his right to a public trial was violated because that claim is procedurally defaulted. (Docket No. 16 at 9-10). This Court agrees.

8

McKinnon is barred from obtaining habeas review when an independent and adequate state ground exists to support the state court decision. See Coleman v. Thompson, 501 U.S. 722, 750 (1991). "The independent and adequate state ground doctrine is grounded in concerns of comity and federalism." Id. at 730. A federal court should look to the "last reasoned opinion" of the state court to discern the grounds for its decision. Lee v. Corsini, 777 F.3d 46, 54 (1st Cir. 2015) (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). Generally, "[a] federal habeas court will not review a claim rejected by a state court if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Walker v. Martin, 562 U.S. 307, 315 (2011) (internal citations omitted). A state procedural ground is adequate to preclude federal merits review "so long as the state regularly follows the rule and has not waived it by relying on some other ground." Jewett v. Brady, 634 F.3d 67, 76 (1st Cir. 2011) (citing Horton v. Allen, 370 F.3d 75, 80–81 (1st Cir. 2004)). If the state court's decision rests on some other, nonprocedural ground, federal merits review will be available only if that ground is federal in nature, or 'interwoven' with federal law. Lee v. Corsini, 777 F.3d at 54-55 (quoting Coleman, 501 U.S. at 733).

In Massachusetts, the rule that "a claim not raised is waived" is regularly enforced and "firmly established." Gunter v. Maloney, 291 F.3d at 79. Massachusetts consistently enforces the rule that unpreserved claims are forfeited, see id., and enforced the rule in the instant case. McKinnon, 85 Mass. App. Ct. at *1 (S.A. 218).

Here, the Appeals Court rejected McKinnon's claim of a violation of his Sixth Amendment right to a public trial on waiver grounds:

> We have reviewed the trial record and it supports the judge's conclusion that the trial transcript flatly contradicts the defendant's claims. The trial judge began the session in open court with the defendant present and, after discussion with the defendant and his lawyer, moved the individual voir dire

9

> portion of the jury selection to a deliberation room. Prior to the move, the judge clearly announced to the defendant that he had the right to have the proceeding conducted in an open courtroom. The defendant did not object to the procedure and, therefore, waived his rights to having the individual voir dire portion of the proceeding conducted in open court. See Commonwealth v. Dyer, 460 Mass. 728, 736-737 (2011).

McKinnon, 85 Mass. App. Ct. 1105 (S.A. 218). The Appeals Court did review McKinnon's claim for a substantial miscarriage of justice under G.L. c. 278, § 33E, but "this sort of limited review does not work a waiver of the contemporaneous objection requirement." Horton v. Allen, 370 F.3d at 81 (citations omitted); see also Gunter, 291 F.3d at 80 ("The mere fact that a state appellate court engages in a discretionary, and necessarily cursory, review under a miscarriage of justice analysis does not in itself indicate that the court has determined to waive an independent state procedural ground for affirming the conviction.") (internal quotations omitted)).

The Appeals Court's decision was based on state grounds that were "independent of the federal question" and "adequate to support the judgment." See Walker, 131 S.Ct. at 1127. Accordingly, McKinnon's claim regarding his right to a public jury selection is procedurally defaulted and habeas review is barred.[3]

---

[3] There are exceptions to a procedural default. When faced with a state court judgment that rests upon an independent and adequate state ground, a court may still consider McKinnon's claim if he "establishes 'cause and prejudice' with respect to the procedural default." Horton, 370 F.3d at 81; see also Burks v. Dubouis, 55 F.3d 712, 716 (1st Cir. 1995). To establish cause, McKinnon must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Horton, 370 F.3d at 81. In determining whether prejudice was established, "[t]he question is not whether the defendant would more likely than not have received a different verdict," but whether "he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Strickler v. Greene, 527 U.S. 263, 289-90 (1999) (citing Kyles v. Whitley, 514 U.S. 419, 434 (1995)). McKinnon has not argued "cause and prejudice" to excuse the default.

"[E]ven absent a showing of cause and prejudice, a federal court exercising its habeas powers should nonetheless overlook a procedural default and hear a barred constitutional claim on the merits if its failure to do so would result in a fundamental miscarriage of justice." Burks,

C.        Right To A Public Trial

Even if the state court decision was not based on an independent and adequate state law ground, McKinnon is still not entitled to habeas relief. Pursuant to the Sixth Amendment, in all criminal prosecutions, "the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. The public trial guarantee is considered so important that courts have granted relief based on the deprivation of this right in various contexts. The right to a public trial has been extended to the voir dire process. Presley v. Georgia, 558 U.S. 209, 212-213 (2010); Press-Enterprise Co. v. Superior Court of Cal., 464 U.S. 501 (1984).

McKinnon argues that the Appeals Court's ruling is "contrary to" and an "unreasonable application" of clearly established Federal law. (Docket No. 13 at 5). "[C]learly established Federal law in §2254(d)(1) refers only to the holdings as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state court decision." Carey v. Musladin, 549 U.S. 70, 74 (2006) (internal citations omitted). "Evaluating whether a rule application was unreasonable depends in large part on the rule's specificity." Morganti v. Ryan, No. 14-CV-11868-IT, 2016 WL 5867409, at *4 (D. Mass. Oct. 6, 2016). "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Id. (citing Harrington, 562 U.S. at 101). When the Supreme Court cases "give no clear answer to the question presented," a state court's resolution of a constitutional question may not serve as the

---

55 F.3d at 717. "To show that a fundamental miscarriage of justice would occur in the habeas context, 'petitioner must establish actual innocence.'" Gunter v. Maloney, 291 F.3d at 83 (citing Coleman, 501 U.S. at 750). To satisfy the miscarriage of justice standard the petitioner must show "that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. Gunter, 291 F.3d at 83.

Here, McKinnon makes no claim of actual innocence. Nor has he established that an exception applies.

11

bases for habeas relief.  Morganti, 2016 WL 5867409, at *4 (citing Wright v. Van Patten, 552 U.S. 120, 126 (2008); see also Knowles v. Mirzayance, 556 U.S. 111, 112 (2009) ("It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme Court.]").

McKinnon cites the Supreme Court decisions in Presley and Waller in support of his petition.  However, neither of these cases addresses the issue of whether counsel has the ability to waive a defendant's Sixth Amendment right to a public trial or whether personal waiver by the defendant is required.  The Supreme Court's holding in Presley extended the right to a public trial to the voir dire process but in no way addressed counsel's ability to waive that right.  See Presley v. Georgia, 558 U.S. 209, 212-213 (2010).  In Waller, the Supreme Court held that the right to a public trial is guaranteed by the Sixth Amendment and exceptional circumstances must exist for the court to order closure.  Waller v. Georgia, 467 U.S. 39, 47 (1984).  Waller, however, is factually dissimilar because in that case the courtroom was closed *over the objection* of the defendant.  Waller, 467 U.S. at 42.  In this case, neither McKinnon nor his counsel made any attempt to object to the closing the courtroom for the jury selection process.  Indeed, McKinnon's lawyer agreed to the procedure.

"[A]lthough these cases, read together, *could* allow a court to determine that waiving the right to a public trial requires the defendant's personal assent, they do not "clearly establish" that personal waiver is required."  Morganti, 2016 WL 5867409, at *5 (emphasis in original).  While not binding on this Court, other circuit courts have split on this issue.[4]  Such decisions

---

[4] Compare Guyton v. Butler, 490 Fed.Appx. 331, 333 (11th Cir. 2012) (table) ("[T]here is no clearly established federal law stating that counsel cannot waive the right to a public trial as a strategy decision without his client's consent.") and Daughtry v. Greiner, No. 01-2466, 2002 WL 31819589, at *1 (2nd Cir. Dec. 16, 2002) (table) ("[T]here is no clearly established binding precedent as to either whether personal waiver of the right to a public trial is constitutionally

12

demonstrate ambiguity about this issue rather than clearly established Supreme Court law on whether the right to a public trial is waivable by counsel.

Further, several First Circuit decisions have held that the right is waivable by counsel. See United States v. Quiles-Olivo, 684 F.3d 177, 186 (1st Cir. 2012) (defense counsel's request, granted by the trial court, that the defendant's mother be allowed into the courtroom waived any further exclusion claim); United States v. Christi, 682 F.3d 138, 142-43 (1st Cir. 2012) (trial counsel did not object to closing the courtroom at sidebar without defendant and defendant was deemed to have waived his public trial right); Bucci v. United States, 662 F.3d 18, 31-32 (1st Cir. 2011) (accepting defense counsel's tactical reasons for failing to object to a partial courtroom closure during jury voir dire as "reasonable").

Without "clearly established" law, the Appeals Court did not articulate "a rule different from the governing law" nor did it "decide a case differently than [the Supreme Court] has done on a set of materially indistinguishable facts." Bell, 535 U.S. at 694 (citing Williams, 529 U.S. at 405-406). Furthermore, the Appeals Court's ruling was not an "unreasonable application" of "clearly established federal law" because it did not (i) apply federal law principles to the facts of McKinnon's case in an objectively unreasonable manner; (ii) unreasonably extend clearly established federal legal principles to McKinnon's case where they should not apply; nor (iii) unreasonably refuse to extend clearly established legal principles to McKinnon's case where they should apply. See Malone v. Clarke, 536 F.3d 54, 63 (1st Cir. 2008). In this case, the trial court judge and trial counsel advised McKinnon of his right to have the jury selection take place in an

---

required, or as to whether waiver by counsel requires consultation with a client."), with Walton v. Briley, 361 F.3d 431, 434 (7th Cir. 2004) ("The record does not indicate that Walton intelligently and voluntarily relinquished a known right. Therefore, we hold that Walton's right to a public trial was not waived by failing to object at trial.").

open court room.  (F.S.A. at 167-168, 171-172).  Defense counsel discussed the right with McKinnon, and subsequently indicated that the judge's offer was acceptable.  Id.  The judge then reiterated that the defendant had a right to conduct the jury selection in an open courtroom and again McKinnon did not object.  (F.S.A. at 172).  Because no case stands for the proposition that the knowing assent of the defendant was required under these circumstances, this grounds fails.

      D.      Ineffective Assistance Of Counsel

McKinnon's claim of ineffective assistance of counsel is directly governed by the Supreme Court's holding in Strickland v. Washington, 466 U.S. 668 (1984).  To prevail on a claim of ineffective assistance of counsel, petitioner must show typically both that counsel's performance was deficient and that such performance resulted in prejudice.  Strickland 466 U.S. at 687; Wright v. Marshall, 656 F.3d 102, 108 (1st Cir. 2011).  Here, McKinnon is not required to establish prejudice because, "the right to a public trial is a structural right, the petitioner does not have to meet the second part of the test."  Morganti, 2016 WL 5867409, at *6 (citing United States v. Owens, 483 F.3d 48, 64 (1st Cir. 2007)).

Because an ineffective assistance of counsel claim is a mixed question of law and fact, it is evaluated under the "unreasonable application" clause of § 2254(d).  Yeboah-Sefah, 556 F.3d at 70-71 (citing Strickland, 446 U.S. at 698).  This Court must determine whether the Appeals Court applied the appropriate standard.  See Malone, 536 F.3d at 63.  Here, the Appeals Court relied on Commonwealth v. Saferian, 366 Mass. 89 (1974), in making its determination.  Because the test laid out in Saferian is sufficiently similar to the test used in Strickland, the two cases may be used interchangeably.  See Ouber v. Guarino, 293 F.3d 19, 32 (1st Cir. 2002) ("Although Strickland and Saferian do not employ identical phraseology, we have described those variations as 'minor' and have concluded that, for habeas purposes, Saferian is a functional

14

equivalent of Strickland").

"[T]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Padilla v. Kentucky, 559 U.S. 356, 377 (2010) (quoting Strickland, 466 U.S. at 688). "Judicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689. There is a strong presumption that counsel's representation was within the "wide range" of reasonable professional assistance. Harrington, 562 U.S. at 104. McKinnon has the burden to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. (quoting Strickland, 466 U.S. at 689). The inquiry is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms," not whether it deviated from best practices or most common custom. Harrington, 562 U.S. at 105 (citing Strickland, 466 U.S. at 690).

McKinnon bases his ineffective assistance of counsel claim on his counsel's failure to both advise him of his right to a public trial and to object to complete closure of the courtroom for jury selection. (Docket No. 13 at 9). He further argues that counsel's failure to object to the closure of the courtroom illustrates of a lack of knowledge of the law and is therefore objectively deficient conduct. Id. As discussed above, however, the record as quoted by the trial judge and the Appeals Court demonstrates that counsel was aware of McKinnon's rights, was reminded of these rights by the judge, and discussed these rights with McKinnon. Accordingly, the Appeals Court was not unreasonable in determining that counsel's performance was not deficient under the first prong of Strickland.[5] Accordingly, habeas relief should be denied on this ground.

---

[5] The Appeals Court also found that even "[a]ssuming that the *Safarian* [sic] *s*tandard has been met, the defendant must show that any error by counsel created a substantial risk of a miscarriage of justice. The defendant has failed to make such a showing." (S.A. 218). As discussed above,

### E.   Sufficiency Of The Evidence For Second Degree Murder Instruction

McKinnon argues that his conviction should be set aside as a matter of due process because there was insufficient evidence for the trial judge to give a second degree murder instruction. (Docket No. 13 at 11). McKinnon contends that because he was acquitted of felony murder, which was the Commonwealth's only theory of first-degree culpability, there was no evidence of malice separate and apart to support the second degree murder conviction. Id.

McKinnon cites Paulding v. Allen, 393 F.3d 280, 282-283 (1st Cir. 2005) to support his argument. (Docket No. 13 at 13). In Paulding, the defendant was convicted of first degree felony murder for his involvement in an armed robbery in which his co-venturer shot a victim. Id. at 281. The Commonwealth presented its case on a theory of joint venture first degree murder. Id. at 284. On appeal, the defendant argued that he was entitled to a second degree murder instruction. Id. at 281. The SJC rejected the argument and held that "a noncapital defendant maintains a due process right to receive a lesser a lesser included offense instruction if the evidence so warrants. Id. at 283.

Here, McKinnon is arguing the reverse. He argues that the lesser included offense was not warranted by the evidence and should not have been included. This was not the issue the court addressed in Paulding and McKinnon's reliance on it is misplaced. As the Appeals Court correctly found:

> We find no merit to the defendant's claim that, because the jury acquitted him of felony-murder, there was insufficient evidence of malice to support the jury's verdict of murder in the second degree. See Commonwealth v. Paulding, 438 Mass. 1, 10 (2002) (in cases of felony-murder in the first

---

because the right to a public trial is a structural right, McKinnon did not in fact have to show prejudice. Morganti, 2016 WL 5867409, at * 6 (citing Owens, 483 F.3d at 64). Because the Appeals Court's conclusion that McKinnon did not show that the first prong of the test, i.e., deficient performance, was met, this potential error by the Appeals Court does not entitle McKinnon to habeas relief.

>degree, judge should instruct on murder in the second degree only if evidence could support a murder in the second degree conviction). Here, the indictment simply charged the defendant with murder, therefore it was sufficient to charge the defendant with murder in either first or second degree. See Commonwealth v. DePace, 442 Mass. 739, 743 (2004). And, there was ample proof of malice. The Commonwealth presented evidence from an eyewitness that the defendant shot the victim with a handgun at close range as the victim attempted to leave the scene. See Commonwealth v. Trinh, 485 Mass. 776, 783-784 (2011) (malice may be inferred from the intentional use of a handgun).

McKinnon, 85 Mass. App. Ct. 1105 at *2 (S.A. 219). This decision is neither contrary to, nor an unreasonable application of, clearly established federal law.

McKinnon's reliance on Presnell is also misplaced. The Presnell court held that, "it is as much a violation of due process to send an accused to prison following the conviction of a charge on which he was never tried as it would be to convict him upon a charge that was never made." Presnell v. Georgia, 439 U.S. 14, 16 (1978). In this case, McKinnon was indicted for murder and the Appeals Court found that the Commonwealth presented "ample proof" of malice to support the conviction. S.A. 219. The second degree murder instruction did not violate McKinnon's due process rights and habeas relief should be denied on this ground.

IV.     RECOMMENDATION

For the foregoing reasons, I recommend that the Court DENY the Petitioner Matthew McKinnon's Petition for Writ of Habeas Corpus in its entirety.

V.      REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the

proposed findings, recommendations, or report to which objection is made, and the basis for such objections.  See Fed. R. Civ. P. 72 and Habeas Corpus Rule 8(b).  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See Phinney v. Wentworth Douglas Hospital, 199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir. 1993).

                                                /s/  Jennifer C. Boal
                                                JENNIFER C. BOAL
                                                U.S. MAGISTRATE JUDGE